(102 App. Div. 121.)

## MURPHY v. WAIT.

(Supreme Court, Appellate Division, Fourth Department.  March 1, 1905.)

**1. AUTOMOBILES — USE OF HIGHWAY — FRIGHTENING HORSES — INJURIES—AC-
      TIONS—NONSUIT.**

Laws 1903, p. 1421, c. 625, § 3, provides that every person driving an automobile shall, on signal, by putting up the hand, from a person driving a restive horse, cause the automobile to immediately stop and to remain stationary, and, on request, shall cause the engine of such automobile to cease running so long as may be necessary to allow the horse to pass. When defendant's automobile came in view, the horse behind which plaintiff was riding was afraid, and her husband got out of the wagon, motioned the automobile to stop, and took the horse by the bit.  The automobile stopped once, and then started along toward the horse.  As it approached him the horse became unmanageable, reared and plunged, and, the automobile keeping on its course, the horse forced the wagon into the ditch, where it was turned over, and plaintiff was thrown out and injured.  *Held* to sustain a finding that defendant was negligent, and hence it was error for the court to direct a nonsuit.

**2. SAME—CONTRIBUTORY NEGLIGENCE.**

In an action for injuries to a person riding behind a horse frightened by defendant's automobile, evidence *held* to require submission of the question of plaintiff's contributory negligence to the jury.

Appeal from Special Term, Cayuga County.

Action by Bridget Murphy against William F. Wait.  From a judgment in favor of defendant, and from an order denying a motion for a new trial on the minutes, and from an order granting a nonsuit, plaintiff appeals.  Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Wright & Parker and Frank C. Cushing, for appellant.

Taber & Brainard, for respondent.

WILLIAMS, J.  The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event.

The action is to recover damages for personal injuries alleged to have been the result of defendant's negligence.  The defendant's automobile was running along the highway, and met the horse and wagon driven by plaintiff's husband.  The horse became frightened at the automobile and overturned the wagon, and the plaintiff, who was riding in the wagon, was thrown out and injured.  The claim made is that the defendant was guilty of negligence in not stopping his machine when it was apparent that the horse was frightened, and an accident was likely to occur, so as to avoid it.  The negligence was predicated upon the principles of the common law, and upon the provisions of recent statutes with reference to automobiles.  By section 3 of chapter 625, p. 1421, of the Laws of 1903, it is provided:

"Every person driving an automobile shall, at request or signal, by putting up the hand, from a person driving or riding a restive horse, or horses, or driving domestic animals, cause the automobile to immediately stop, and to remain stationary, and upon request, shall cause the engine of such automobile to cease running so long as may be necessary, to allow said horses, or domestic animals, to pass.  This provision shall apply to automobiles going in the same or in an opposite direction."

This statute became a law May 15, 1903, and this accident occurred June 11, 1903. The rule of the common law is, and always has been, that, while a person might travel the highway with a conveyance or a loaded vehicle liable to frighten horses, yet he must, while doing so, exercise reasonable care to avoid accident and injury to others traveling along such highway. This principle of law is so well settled that authorities need not be cited in support of it.

The court having granted a nonsuit here, the plaintiff upon appeal is entitled to a consideration of the evidence in a light most favorable to her. The jury would have been justified in finding the following facts if the court had permitted them to pass upon the evidence: When the automobile came in view, the horse was afraid, and plaintiff's husband got out of the wagon, motioned the automobile with his hand to stop, went to the horse's head, and took him by the bit. The automobile stopped once, and then started along towards the horse. As it approached him, the horse became unmanageable, reared and plunged, and the plaintiff's husband struggled to control him, and hallooed "Whoa" continually. The automobile nevertheless was kept right along in its course, and passed along near the horse, not turning away from the horse at all. The horse forced the wagon into the ditch, where it was turned over, and the plaintiff was thrown out and injured. It is very clear that the jury would have been justified, in view of this evidence, in finding that the defendant was negligent in not stopping the automobile, turning out, and remaining quiet until the horse passed it. There could be no doubt as to the horse being frightened and becoming more unmanageable every moment as the automobile approached it. The defendant saw this, and must have realized that an accident was likely to occur if the automobile was not stopped. Nevertheless he sent the machine along, regardless of consequences. The negligence of defendant was a question for the jury, and not for the court.

It is suggested that the plaintiff did not show herself free from contributory negligence. She appears to have been frightened and confused, and to have screamed, as women usually do. Under the circumstances, she was not to be held to the exercise of the best of judgment, as a matter of law. Upon all the evidence, it was a question of fact for the jury whether she exercised the care of a reasonably prudent woman under the circumstances surrounding her. The court could not determine the question as one of law. The nonsuit was erroneously granted. The case should have been submitted to the jury.

Since the automobile has come into use upon our streets and highways, these accidents have been common, and actions to recover damages resulting therefrom have been frequent. These machines may be used on the public highways, but horses will also continue to be used for a time at least. Both may be legally used as motive power in public travel. Some horses are frightened when they meet these machines, and it is the duty of persons running the machines to exercise reasonable care to avoid accident when horses become frightened. It is not pleasant to be obliged to slow down these rapid running machines to accommodate persons driving or riding slow country horses, that do not readily become accustomed to the new innovation. It is more agreeable to send the machine along, and let the horse get on as best he may; but

it is well to understand, if this course is adopted, and accident and injury result, that the automobile owner may be called upon to respond in damages for such injuries.

The judgment and orders should be reversed, and a new trial granted, with costs to the appellant to abide event. All concur.